At this time, we'll hear Gesualdi v. Quadrozzi Equipment Leasing. May it please the Court, Eric Berry for the Appellant's Quadrozzi Equipment Leasing at Amstel Beverage and Recycling. This, as you know, is a case where the non-signatory to a CBA was held liable for approximately $1.5 million in damages, even though it had its own collective bargaining agreement with an entirely different union, and even though three of the employees — Before you get into the merits, what about the timeliness issue? The motion to set aside the default was made, what, 20-something months after service? Four months after the entry of default? I mean, why was it not untimely? The four months after the entry of the default is within the time frame. Yes, but there have been district courts that have held three or four months, and in this case, three or four months was after an extraordinarily long period of time in which your clients had every opportunity to come in. So to say just four months seems to me a peculiar thing when the original thing was filed, what, 20 months before? Two responses, Your Honor. First of all, there are the admitted and undisputed extraordinary mitigating circumstances of the Hurricane Sandy storm that I believe it was in October, perhaps November . . . The district court made clear it found that your explanations were in the nature of my dog ate my homework. We obviously . . . Should we say that the district judge was just wrong on that? Well, I believe the district judge was wrong. I believe the circumstances are similar to those that have been forgiven in other cases in this circuit and elsewhere. But principally, as this court's mandate recognized, that before the district judge even got to that issue, it was required to assess the sufficiency of the pleading. And in terms of the sufficiency of the pleading, this case does, this complaint does not . . . I thought that if it was untimely, that took care of everything, but am I wrong? In Finkel versus, I'm not sure how to pronounce this, it's Finkel versus Romanowich, something like that. And in Tejau, this court looked at that precise issue and specifically held, and in the mandate in this case, specifically held that the sufficiency of the pleading was an absolute first determination. And if, because a default only admits the well-pled allegations, that's in the mandate that was issued in this case, it's in Tejau, it's in Finkel. So we have to look first at the sufficiency of the pleading. The pleading in this case, part of the claim is a fraud-based claim, an alter ego claim that we were . . . The motion to set aside the default judgment was timely. When we got to that, wouldn't we review that for abuse of discretion? It depends. Who knows better than Judge Deery what's going on in this case? You're saying that if you found the complaint to be sufficient. That's correct. And then went on. Again, I . . . If that is so, then if untimeliness defeats the claim on abuse of discretion review, it wouldn't matter whether the complaint was sufficient or not. This court, I think on three occasions, including the prior decision in this case, has held that if the complaint is insufficient, that's the end of the question. That's the end of it. Because it's well established that by defaulting, you only admit well-pled allegations. Now, if you were to find this complaint to be well-pled, and I believe you should not, but if you did, there are far more egregious circumstances. Corporate internal in-house counsel not communicating with each other. A lawyer not answering because his law firm thought he was going to be pro se, and he thought the law firm he contacted was answering it. These are . . . What's the standard of review on those issues? Is abuse of discretion, but . . . There wasn't an abuse of discretion here. This court has said, although it's abuse of discretion, it's limited . . . There wasn't an abuse of discretion here. I believe that if you take . . . First of all, the allegation is not simply by the principles. There's an affidavit from one of the attorneys involved in the miscommunication. I think you have to credit the allegation. Secondly, there is a . . . The trial judge looks at this. The case is twenty-one months old. The default judgment was entered four months ago. They're finally making a motion to vacate. They don't explain three months of delay. How is it an abuse of discretion not to set aside the judgment? We did explain, I believe. We explained that offices are decimated. There's no there there. Getting . . . The magistrate judge said after they became aware of it, after about half a month, a month or so, and then three months went by, they could have done something. They didn't. They could have written a letter saying we need some time to get our papers in, but our offices are decimated. They didn't do anything. The timing was we learned of the default approximately a month after it happened, which, because the bank account was restrained. And approximately three months after that, we made the motion. That seemed . . . And there were . . . How did you choose to make the motion? Because if your office is wiped out by a storm, there's lots of different things that have to be done, and apparently- But there was some communication back and forth between the sister and brothers which suggested quite the opposite, that they knew perfectly well what was going on, and were just not, just diddling. I mean, there was that communication wasn't there? There were, these, obviously, accidents don't happen if people are not acting in a negligent fashion. We can see this is extremely negligent. But the law remains, and the law of the case, if you will, in this case, is that you look at the sufficiency of the pleading first. Okay, then, I'm not sure that that is quite as you say it, but let's assume that. Do you say that where the question is, the questions in this case, that fraud is always an element of that as against it may be, but it may also not be? So that what was alleged here does not require a 9B, but our standard 8A. I believe you have to distinguish between alter ego, the alter ego theory and the single employer theory. The alter ego theory is under this court's decision in Lilly based on an attempt to evade CBA obligations, a sham activity. That's clearly a sham activity attempts to- Not necessarily a fraud. I mean, it is something that is designed to do certain things, but fraud is a specific thing. And indeed, one could argue that the complaint is not that specific precisely because what they are alleging is an attempt to evade which doesn't amount to a fraud. That's why it doesn't- I'm not quite sure that 9B only applies to fraud. But it is clear that if you look at this complaint, there is an allegation that we are attempting to evade, we are attempting to deceive. That certainly pushes it in the direction of a particularity requirement. Second, even if you ignore the, even if you look at only the single liability theory, which we agree is not subject to a particularity requirement. As opposed to alter ego theory. The single employer allegations don't even come close to meeting the standards of Iqbal and Twomley. There is no, as many courts have said, who, what, where, whatsoever. And the reason and the problem this creates is if this sort of pleading is sufficient, it gives a license not to conduct any investigation whatsoever. And one of the results of this lack of investigation and generalized pleading. Let me, let me ask you this. Suppose we agree with you as to the alter ego, but also agree with what you've just said, that the single employer is not subject to the fraud. And suppose we disagree with you on whether Iqbal is met under the single employer. Is that sufficient to be a well pleaded complaint so that then everything else follows? That is, well pleaded in one particular and therefore there is all the discretionary thing that we were talking about after. If we assume the plausibility, Iqbal, Twomley, are merely linguistic requirements. That attorneys, by being specific in their usage, by not alleging things on information, belief, etc., by being maybe overly, by maybe pleading beyond their investigation, if you will. If you assume that Iqbal, Twomley, and the plausibility standards are only linguistic, you still don't have an adequate pleading here, because at minimum, the- That isn't my question. Okay, and that's the, and I can answer. And here's our position on this. At minimum, at least the complaint has to say that the non-signatory paid for covered work. No, that still doesn't answer my question. Well, but here- My question is, if one of these two claims meets the requirement, if a single employer meets the requirement, even if the alter ego does not, just assume with me, is that enough so that that would be, assume that to be a well pleaded complaint, is that enough to get us, under your theory, beyond well pleaded complaint to the discretionary issue with respect to default? I believe so. I think one of the factors that we're going to have to look at in examining its discretion, in exercising its discretion, is whether it's even alleged in the complaint that we did, what is something that is a violation. Here, unlike the Continental Floors case, here there is no allegation whatsoever that Amstel, the non-signatory, paid for covered work. The closest complaint gets is paragraph 74 at page 26 of the appendix, which states, on information and belief, at all times material hereto, Amstel has employed at least one employee who covered, who performed covered work. It doesn't say Amstel paid this employee. And also, it's not disputed- It's illegal to employ someone paying them, isn't it? It's not disputed that these are affiliated companies. And that certain people went back and forth between the two payrolls. There's never been any doubt. If, for example, the QEL drivers didn't have work, they would sign up and get on the Amstel payroll, and it's never been denied, it's never been contested. That's all understood. But what you need is a manipulation of the payrolls. There's no allegation in here that we- You've reserved a couple minutes rebuttal. Thank you. Mr. Berry will hear you then. Mr. Maxon. May it please the court, my name is Svee Maxon of Cohen, Weiss, and Simon, LLP. We represent the trustees of the local 282 trust funds, the plaintiff appellees. Before getting into argument, I just want to point out one factual issue that's been important here. There's been an allegation that Quadroza Equipment Leasing's offices were destroyed by Hurricane Sandy. That is in a brief. However, there is nothing in the record to support that. The only thing the record says is in Catherine Quadroza's declaration, she says that they were dealing with the aftermath of Hurricane Sandy. There's nothing about a destroyed office, there's nothing beyond dealing with the aftermath. Getting to the merits of the, first the complaint, as the appellants have argued that there's not a single evidentiary fact in the complaint. That statement is wrong. And the district court did not err in finding that the complaint properly pled both the single employer and alter ego claims. The complaint alleges that the appellants shared the following. Office space, management, ownership, customers, equipment, supervision, disciplinary processes, hiring practices, employees, a mailing address, and a president, John Quadroza Jr. Are those just bare allegations or is there sufficient pleading as to that, you just say it? So a bare allegation would be an allegation. Somebody who is an officer of both corporations, give the address at which they're located. Rule eight doesn't demand that. It only demands a short and plain statement of the claim. And as long as you're stating factual. Yeah. It's, as long as the statements are facts, as in actual occurrences or circumstances. And plausible. And plausible. And plausible. Then you have a statement of a claim. Okay, that's fine for rule eight. Nine B might be different. And so I come back to my question. Suppose that there is a well pleaded complaint with respect to single employer. But that with respect, and I'm not saying it is so, but with respect to alter ego, fraud is sufficiently an element of it that a nine B is needed. And let's assume also that nine B may not be met here. I know you would not say that. Is it enough that eight A is met with respect to the single employer to get us to the question of, it is then in the discretion of the court to decide whether the default should stand or not, given everything else. Absolutely. And in fact. Including untimely. Yes. And the district court found in the other direction that the alter ego claims not only were sufficient, but. I understand that. But suppose we were to disagree with that, but were to agree with you and the district court also on the eight A. Would that be enough to get us at least to untimely? Yes, you only need one. And that's under Combus on holdings, either or. So then, moving on to the issue of timeliness. What the district court found is that this three month or perhaps four month, depending on who you believe, delay between the time when the appellants found out about this case and when they filed their motion to vacate was not adequately explained. That is the key. Well, the judge found that it was strategic delay, which really sounds awful. But what strategy would underlie such a strategic delay? Well. What did the judge have in mind? At the end of 2011, something that my clients didn't know about. But this company started, or at least one of the companies and later both of the companies, apparently started to become judgment proof. Quadrosi Equipment Leasing was dissolved by the state of New York in, I believe it was October or November of 2011. Again, we weren't aware of this. By the spring of 2012, Quadrosi had defaulted on a separate, on a settlement agreement in a separate case. And a plaintiff who had sued both entities was complaining that he wasn't, he had received a judgment and wasn't able to collect on it. So there's evidence that at that point, the companies were becoming judgment proof. Now, they don't decide to try to vacate the default until all of a sudden they realize that there's still a pot of money out there that is at risk. This was the settlement with Colavino Construction. Colavino had a settlement with two entities, Quadrosi Concrete, which is not a defendant here, and Quadrosi Equipment Leasing. And so it was a $300,000 settlement. Let me- Yeah. You are saying that the strategy was that at the time they defaulted, they thought there was nothing that your client could get at. And later they learned that there is something your client can get at. And at that point, they come in and try to get the default removed. Is that your claim? Well, to the extent there was a strategy, this could also have just been pure neglect. Is this in the record? Well, there is evidence in the record of the apparent dissolution. Well, certainly the dissolution of one of the companies and the apparent insolvency of both. Is this what the district court had in mind when it said strategy? Or was it just using words because it liked it? Well, I think the district court was saying that there was evidence of a willful default in that Catherine Quadrosi sent an email that specifically said, at this time, we cannot engage counsel. And then she said, if possible, we will try this case ourselves. Now, since it is not possible for a corporation to go pro se, she's essentially saying right there in her email, and this is not controverted by anything that the appellants have said, she's saying in her email, we are going to default. That is the key evidence of a willful default. If a company is suffering insolvency and running out of money and has to choose between paying its creditors and paying salaries or hiring a lawyer to defend an empty pot of money, why is it willful wrongdoing to choose the former rather than the latter? Well, the question is just whether they actually willfully rather than neglectfully didn't respond. So excusable neglect implies there's a question of some sort of neglect. That is allowed. But if you actually make the decision, I am not going to respond to this complaint, at that point, you lose. At that point, on the balance of willfulness, whether there's a meritorious case and prejudice— You're saying that willful default does not mean nasty, mean, evil default. No. Just an intentional to default. And then you can't come back and say, hey, I've changed my mind. Exactly. Exactly. But even without willfulness or even without specifically sitting down and saying, I think I'm not going to respond, where there's a pattern of egregious behavior courts have held that that constitutes willfulness. And in this case, as you've noted, there were interactions between the companies and the trustees over a long period. But then at around the same time that Quadrosi Equipment Leasing was dissolving, their cooperation in the case dissolved as well. And from that point— Of course, when you say egregious, you're making a different argument. Because Venvet says they were being nasty, mean, and you before have given us a reason why it would be perfectly rational without being nasty or mean just not to bother because there isn't anything there. And that may be willfulness, but I'm not sure it can have it quite both ways. Right. Well, the issue is just that they certainly had fair notice that they had to respond and they did not. Thank you. Thank you. Thank you. We'll hear from— My apologies for this, but I have to read from the mandate from this court issued in this case, which states—it's a special appendix in page 10—before a district court enters a default judgment, it must determine whether the allegations in a complaint establish the defendant's liability as a matter of law. That's—and it cites Finkel, one of the decisions that I cited in the opening argument. So that's—and it's not just Finkel in this decision. In this case, it's also Tejao and several others. This is the law, and it makes perfect sense that we're only—by defaulting, you're only admitted the well-pled allegations. So if there are no well-pled allegations, you're not admitting anything. Okay. But you didn't—I mean, at this point, what we're looking at is the denial of a motion to set aside the default judgment. We're not reviewing the default judgment directly, are we? Because the argument you're making— By overturning the denial, I believe you would be—you would be either—I'm assuming you would order, and we've requested, that when the—if the denial is overturned— What's the difference between reviewing the entry of a default judgment and reviewing the denial of a motion to set aside a default judgment? I—see, I've always had trouble with that, okay? I don't— You are having trouble with it because it looks like, in the latter case, delay matters a lot, a lot more. And maybe we don't have to read the complaint because you had the opportunity to argue that in the appeal from the entry of default. Oh, the only thing I can say to that is I've looked at just a pattern of outcomes, and in all the decisions where this Court and other courts have held there's no adequate pleading, it has reinstated the case and ordered— Are you saying that we should look at the question of whether there is an adequate pleading de novo, even though this comes up on a motion to— I think that's—I believe that's how they've all come up. I think it's the only way you can get a default judgment before this Court is to move to vacate it, lose, and then appeal the denial of that motion. I don't see there's any other procedural way to do it. Okay. Thank you. Thank you. Thank you both. We'll reserve decision. And at this—